UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MAURICE J. CLAYTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 4:16-CV-30-HSM-CHS |
| ) | |
| BEDFORD COUNTY SHERIFF'S DEP'T., ) | |
| AUSTIN SWING, Sheriff, ) | |
| TIM IOKY, Captain, *and* ) | |
| KENNETH MATTHEWS, Doctor, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

On March 10, 2016, Maurice J. Clayton filed a Complaint under 42 U.S.C. § 1983 [Doc. 2] against various defendants associated with the Bedford County Correctional Complex, where he was then incarcerated. He subsequently filed his motion for leave to proceed *in forma pauperis* [Doc. 4], which was granted by the Court on January 11, 2019 [Doc. 6]. However, by that date Plaintiff had been transferred to the Turney Center Industrial Complex, where he remains incarcerated at present, and the Complaint has not yet been screened pursuant to the Prison Litigation Reform Act ("PLRA").[1] *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). For the reasons set forth herein, the Court will **DISMISS** this action in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A) for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

---

[1] Plaintiff's contact information was updated on the Court's docket prior to the entry of the Court's January 11, 2019 Order, which was sent to Plaintiff at his new location of incarceration. A search of the Tennessee Department of Corrections' on-line Inmate Locator Service – which allows the public to track the location of state inmates – confirms that Plaintiff is still incarcerated at Turney Center Industrial Complex. *See* Tenn. Dep't of Corr. Felony Offender Information Search, https://apps.tn.gov/foil-app/search.jsp (last visited Aug. 8, 2019).

## I. PLAINTIFF'S COMPLAINT

Plaintiff's Complaint, though brief, is difficult to discern because of the rambling and variable nature of the grievances contained therein. Plaintiff alleges that his Eighth and Fourteenth Amendments rights under the U.S. Constitution have been violated by the Bedford County Sheriff's Department and three individual defendants: Sheriff Austin Swing, Captain Tim Ioky, and Doctor Kenneth Matthews [Doc. 1 at 1]. The stream of consciousness narrative discusses: (1) Plaintiff's diagnosis of scoliosis, his opinion that his "one inch thick" prison mattress exacerbates his back pain from that medical condition, and his unanswered requests to unnamed "nurses" to provide him with a better mattress; (2) various complaints about Dr. Matthews, including his denial of "proper treatment and advise," his statements that Plaintiff and/or his family are responsible for payment of Plaintiff's medical expenses during his period of incarceration, and his lack of worry or concern regarding the inmates' medical needs or ability to pay their bills; and (3) various complaints about conditions of confinement at BCCX, including unsanitary conditions that arise from Plaintiff having to sleep on a "thin mat[]" close to a toilet, overcrowding in his cell, "dirt, mold, fun[g]i, rust, and bacteria throughout the jail," failure of officials to provide him with cleaning supplies, "very small" food portions, and lack of space for physical exercise [*Id*. at 1-3]. Plaintiff's Complaint does not contain any specific allegations as to Defendant Swing, and mentions Defendant Ioky only once, stating "I have filed several inmate request forms forwarding them to Captain Tim Ioky, pertaining to my medical condition, the doctor denying me medical treatment, and the unconstitutional living conditions in this jail" [*Id*. at 2].

## II. LEGAL STANDARDS

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim

for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Jones v. Bock*, 549 U.S. 199, 213 (2007); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). Courts must liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *but see Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006) (noting that, despite the leniency afforded to *pro se* plaintiffs, the Court is "not require[d] to either guess the nature of or create a litigant's claim.").

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in [Federal Rule of Civil Procedure] 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). When reviewing a complaint for failure to state a claim under Rule 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678; *see Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) ("A motion to dismiss for failure to state a claim [under Rule 12(b)(6)] is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."). While "detailed factual allegations" are not required, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Therefore, to survive dismissal for failure to state a claim, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*citing Twombly*, 550 U.S. at 555).

In order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Dominguez v. Corr. Med. Svcs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Haywood v. Drown*, 556 U.S. 729, 731 (2009); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere"). Plaintiff's Complaint appears to assert claims for deliberate indifference to his serious medical needs and unconstitutional conditions of confinement, in violation of the Eighth Amendment, as well as violations of his rights to procedural due process pursuant to the Fourteenth Amendment.

A prison authority may violate the Eighth Amendment by demonstrating deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). The standard is comprised of both objective and subjective components: the objective component requires a plaintiff to show a "sufficiently serious" deprivation, while the subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" (or lack thereof) or by "interfer[ing] with treatment once prescribed." *Estelle,* 429 U.S. at 104-5; *Farmer*, 511 U.S. at 836 (defining deliberate indifference as lying "between the poles of negligence at one end and purpose or knowledge at the other").

4

With respect to conditions of confinement, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As such, the Supreme Court has held that only those conditions that deny a prisoner "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1 (1992); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (noting that prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering"); *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) (noting that overcrowding is not a per se violation of the Eighth Amendment, and that the prisoner must instead allege "extreme deprivations" resulting from the complained of conditions).

A claim for violation of procedural due process rights pursuant to the Fourteenth Amendment requires the plaintiff to demonstrate that (1) he has a liberty or property interest which has been interfered with by the state, and (2) the procedures attendant upon that deprivation were constitutionally deficient. *Bazzatta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). A district court must consider the second question only if the inmate satisfies his burden as to the first; that is, it may "reach the question of what process is due only if the inmate[] establish[es] a constitutionally protected liberty interest." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). If the second question may be reached, the "essence" of procedural due process is that deprivations of liberty interests must be accompanied by notice and an opportunity for an appropriate hearing. *See, e.g.*, *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of the government."). However, "[a] claim of negligence will not support a procedural due process claim[.]" *Zinermon v. Burch*, 494 U.S. 113, 143 (1990)grint; *c.f. Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (noting that

5

liability may not be imposed under § 1983 based on the denial of an administrative grievance or on failure to act on information contained in a grievance).

## III. ANALYSIS

### A. Bedford County Sheriff's Department

Plaintiff has named the Bedford County Sheriff's Office as a Defendant to this action. However, the Bedford County Sheriff's Office is not a separate legal entity amenable to suit under 42 U.S.C. § 1983. That is, the Sheriff's Department is not a municipality, but rather, is merely a department or agency within Bedford County, a political subdivision of the State of Tennessee. *See, e.g.*, *Hull v. Davidson Cty. Sheriff's Office*, 2017 WL 1322104, at *2 (M.D. Tenn. Apr. 3, 2017) ("[P]olice departments and sheriff's departments are not proper parties to a § 1983 suit; they are not bodies politic and, as such, as not 'persons' within the meaning of § 1983."); *Mathes v. Metro. Gov't of Nashville & Davidson Cty.*, 2010 WL 3341889 (M.D. Tenn. Aug. 25, 2010)). (noting that Tennessee law "specifically provides that *counties* may be sued for the actions of sheriff's deputies [but] it does not mention sheriff's department"); *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954 (S.D. Ohio 2000) ("The question here is not whether the Sheriff's Office is a 'person' for the purposes of liability under *Monell* and § 1983, but whether the Sheriff's Office is a proper legal entity subject to suit. We find that it is not."); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994); *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992). Accordingly, Plaintiff has failed to state a claim for relief against the Bedford County Sheriff's Office, and his claims against this Defendant will accordingly be **DISMISSED**.

### B. Individual Defendants

Plaintiff has not specified whether his claims against the individual defendants are raised in their individual or official capacities. An individual capacity action "seek[s] to impose personal

liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 163 (1985). As such, a constitutional claim against an individual must be based upon active unconstitutional behavior by that person. *Grinter*, 532 F.3d at 575-76; *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Government officials may not, therefore, be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

By contrast, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews*, 35 F.3d at 1049; *see also Graham*, 473 U.S. at 166 ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, any construed claims against Swing, Ioky, or Matthews in their official capacities would be equivalent to claims against the municipality itself—in this case, Bedford County.

The Court will first address the potential individual capacity claims against each named Defendant and will then address any arguable official capacity claims against Bedford County.

### 1. *Defendant Swing*

As noted above, Plaintiff's Complaint has failed to set for any factual allegations against Sheriff Swing individually. Rather, it appears that Plaintiff has attempted to sue Swing under the theories of respondeat superior and vicarious liability, which as discussed, is insufficient to state a claim against an official in his individual capacity. Because Plaintiff has not pled any facts regarding Swing's actions or inactions that give rise to a plausible § 1983 claim, any claims against

7

him in his individual capacity must be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A) for failure to state a claim.

    2.    *Defendant Ioky*

Plaintiff's Complaint contains an isolated statement regarding Defendant Ioky, in which he alleges that he "forwarded" copies of his various grievances regarding medical care and prison conditions to the Captain. There are no allegations suggesting that Ioky was personally involved in or responsible for decisions regarding Plaintiff's medical care, the approval or denial of any grievance, or the various prison conditions Plaintiff alleges to be unconstitutionally deprave. Even if the Court were to find that Plaintiff had shown a sufficiently serious deprivation of medical care and/or sufficiently grave prison conditions, it cannot find that Plaintiff has shown that Ioky himself was a municipal actor in any such Eighth Amendment deprivation. Similarly, the Court finds that Plaintiff has failed to state a claim against Ioky pursuant to the Fourteenth Amendment, as individual liability may not be imposed under § 1983 and the Due Process Clause based solely on an official's failure to act on information contained in a grievance. *See Grinter*, 532 F.3d at 576. Because Plaintiff has not pled any facts regarding Ioky's actions (or inactions) that give rise to a plausible § 1983 claim, any claims against him in his individual capacity must be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A) for failure to state a claim.

    3.    *Defendant Matthews*

Plaintiff's Complaint discusses Matthews more than any of the other named Defendants, but even these allegations are scant and nonspecific. Plaintiff alleges that Matthews has denied him "proper treatment and advise[sic]," but he fails to give any examples of medical conditions for which Matthews failed to treat him or gave him improper advice. Indeed, it is not even clear that Plaintiff's allegations against Matthews are related to his scoliosis – the only medical

8

condition identified in the Complaint – as the narrative portion of his argument regarding scoliosis and back pain referenced only "nurses."[2] Even liberally construed, Plaintiff's allegations regarding Matthews' medical care (or lack thereof) are insufficient to demonstrate either the objective or the subjective component of medical deliberate indifference, and as such, are insufficient to allow the Court to infer more than a mere possibility of misconduct by Matthews.

Plaintiff's allegations regarding Matthews' "lack of concern" for inmates physical and financial welfare are also insufficient to state any claim for relief under § 1983.[3] "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment." *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). Accordingly, federal court have found that even verbal abuse and harassment that rises to the level of "shameful and utterly unprofessional" does not rise to the level of a constitutional violation. *See, e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003). Without any allegation that Matthews denied him any necessary medical care based on his lack of availability to pay expenses or based upon any personal lack of concern for inmate welfare, this allegation must be viewed as a claim for verbal harassment, which is not an

---

[2] Plaintiff has not named any BCCX nurses as Defendants to this action. Even if he had, however, the allegations against them – that Plaintiff made "requests" for a better mattress which went unanswered – are too vague and conclusory to establish any medical deliberate indifference or violation of the tenets of due process.

[3] Despite liberal interpretation, the Court remains perplexed by Plaintiff's allegations that Matthews stated that Plaintiff and/or his family would be responsible for the payment of medical expenses. Plaintiff does not allege that his prison account was improperly charged for services not rendered or for amounts inappropriate for services rendered. Even if Plaintiff had so alleged, claims related to the deprivation of personal property and inaccurate medical billing are governed by Tennessee State law and are generally under the purview of Tennessee Claims Commission. *See* Tenn. Code Ann. § 9-8-307, § 41-4-115. As such, any such claim would not be actionable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984); *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

actionable Eighth Amendment claim. Plaintiff has accordingly failed to set forth any plausible claim for relief against Matthews in his individual capacity, and all claims against him will accordingly be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A).

### 4. *Official Capacity Claims*

As discussed above, any arguable claims against Matthews, Ioky, or Swing in their official capacities are to be treated as claims against municipality – in this case, Bedford County. *See Matthews*, 35 F.3d at 1049. In order to succeed on a § 1983 claim premised on municipal liability, a plaintiff must establish that: (1) his harm was caused by a constitutional violation; and (2) the municipality itself was responsible for that violation, generally because of a policy, custom, pattern, or practice of the municipal defendant that caused the Plaintiff's constitutional injury. *See, e.g.*, *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 941 (M.D. Tenn. 2012); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").

As discussed in detail above, Plaintiff has not pled facts sufficient to allege a viable claim for a constitutional violation at the hands of any of the named defendants (or unnamed individuals) referenced in the Complaint. Plaintiff also makes claims regarding conditions of confinement at BCCX, including unsanitary conditions, unclean and uncomfortable sleeping conditions, overcrowding, meals that do not meet baseline standards for caloric intake, lack of space for physical exercise. However, these claims are premised on general and conclusory factual allegations which are simply insufficient to allow the Court to plausibly infer that the conditions

at BCCX are so grave, extreme, and uncivilized as to trigger the protections of the Eighth Amendment.[4]

However, even assuming that Plaintiff could establish that he suffered a constitutional violation, Plaintiff's Complaint does not contain allegations regarding any policies, customs, patterns, or practices of Bedford County that caused Plaintiff's alleged harms. Specifically, there are no allegations that the County had any policy, custom, pattern, or practice of supporting or ignoring the types of purported misconduct Plaintiff alleges against various individuals, including, *inter alia*, failure to respond to his requests for a new mattress and failure to properly treat his scoliosis and/or other unnamed medical conditions. Additionally, there are no allegations that the County had any policy, custom, pattern, or practice of: (1) making inmates sleep on the ground next to toilets; (2) providing food portions that violated nutrition and caloric intake guidelines; (3) restricting space for or preventing inmates from engaging in physical exercise; or (4) creating or allowing unsanitary and unsafe conditions through the facility. The Court cannot find, based on the limited factual allegations set forth in the Complaint, that Plaintiff has sufficiently pled a claim for municipal liability against Bedford County under § 1983; as such, any official capacity claims must be **DISMISSED** pursuant to 28 U.S.C. § 1915.

## IV. CONCLUSION

For these reasons, this action is hereby **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983 pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). The

---

[4] Additionally, Plaintiff's conditions of confinement claims are, in large part, moot given that he is no longer housed at BCCX. *See, e.g.*, *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003); *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)); *Miller v. Ghee*, 22 F. App'x 388, 389 (6th Cir. 2001).

Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

      */s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE